## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BRENT WEICKERT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:16-cv-00142-RJL** |
| | ) | |
| **NATURAL PRODUCTS ASSOCIATION** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DANIEL FABRICANT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
### MOTION TO COMPEL ARBITRATION AND STAY CASE PENDING ARBITRATION

Natural Products Association ("NPA" or the "Association") and Daniel Fabricant (collectively "Defendants"), by counsel, pursuant the Federal Arbitration Action, 9 U.S.C. §§ 1, *et seq*., (2014) ("FAA"), submit this Reply Memorandum in Support of their Motion to Compel Arbitration and Stay Case Pending Arbitration.

## I.      INTRODUCTION

Frustrated by the fact that the Federal Arbitration Act ("FAA") compels arbitration of his claims, Plaintiff invites this Court to ignore controlling precedent from the Supreme Court of the United States, as well as a recent opinion by the Ninth Circuit, both of which expressly rejected his arguments. In essence, Plaintiff would have this Court hold that a mere passing reference to California *procedure* in an arbitration agreement somehow requires the application of California *substantive law*, rather than the FAA. Likewise, Plaintiff feigns surprise and cries foul at the suggestion that he, too, should be required to follow the grievance and arbitration procedures applicable to all other NPA employees. Not only did Plaintiff avail himself of these procedures

prior to filing his Complaint in the case at bar, but he personally was responsible for administering the procedures to other employees during the course of his 18-year employment as Senior Vice President and Chief Financial Officer of NPA.

Finally, Plaintiff professes that he would be prejudiced if compelled to arbitrate this four-month-old dispute in which no discovery or substantive litigation on the merits has taken place. Despite Plaintiff's protestations to the contrary, it is well settled that a party is entitled to place its case in the proper forum before filing a motion to compel arbitration. It is also well settled that litigation expenses alone do not constitute prejudice. Therefore, arbitration of this dispute is compulsory, and because all of Plaintiff's claims are covered by the agreement to arbitrate, this Court should compel arbitration and stay this case pending the outcome of arbitration.

## II.    ARGUMENT

### A. The Federal Arbitration Act and The JAMS Arbitration Rules and Procedures for Employment Disputes Govern Arbitrability.

Contrary to Weickert's assertions in his Opposition Brief, the FAA, not the California Arbitration Act ("CAA") governs the issue of arbitrability. As explained by the Supreme Court of the United States,

> the Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 *et seq*. (2000 ed. and Supp. V), establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. ***The Act, which rests on Congress' authority under the Commerce Clause, supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration***.

*Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (emphasis added).

In *Preston*, a California entertainment attorney ("Preston") initiated arbitration proceedings against Fox television's "Judge Alex" ("Ferrer"), seeking overdue fees under their management contract. *Id*. at 350. Specifically, Preston invoked the parties' agreement to arbitrate "any dispute ... relating to the terms of [the contract] or the breach, validity, or legality thereof ...

2

in accordance with the rules [of the American Arbitration Association]." *Id*. (brackets in original). In response, Ferrer petitioned the California Labor Commissioner for an injunction, charging that the contract was invalid under the California Talent Agencies Act ("TAA"). *Id*. After the Labor Commissioner found that he lacked authority to stay the arbitration, Ferrer filed suit in Los Angeles Superior Court. *Id*. Ultimately, the California Court of Appeal upheld an injunction restraining Preston from proceeding before the arbitrator, and found that the TAA vested "exclusive original jurisdiction" over the dispute in the Labor Commissioner. *Id*. at 351.

The Supreme Court of the United States reversed, however, finding that the "[p]rocedural prescriptions of the TAA ... conflict with the FAA's dispute resolution regime" by imposing "prerequisites to enforcement of an arbitration agreement that are not applicable to contracts generally." *Preston*, 552 U.S. at 356. Relying on the Court's prior opinion in *Volt*, Ferrer argued that the contract's choice-of-law clause, which stated that the "agreement shall be governed by the laws of the state of California," called for "the application of California procedural law." *Id*. at 361. The Supreme Court disagreed, finding that by incorporating the rules of the American Arbitration Association (the "AAA Rules"), "the arbitration clause speaks to the matter in controversy." *Id*. Therefore, the Court found that Ferrer's reliance on *Volt* was misplaced, emphasizing that because "Volt never argued that incorporation of those rules trumped the choice-of-law clause contained in the contract ... neither our decision in *Volt* nor the decision of the California appeals court in that case addressed the import of the contract's incorporation by reference of privately promulgated arbitration rules." *Id.* at 361-62. The Court then cited AAA Rule 7(b), which gives the arbitrator the power to determine the "existence or validity of a contract of which an arbitration clause forms a part," and found that the "'best way to harmonize' the parties' adoption of the AAA rules and their selection of California law," was to

limit the choice-of-law clause to substantive state law, leaving arbitrability issues to be resolved by the FAA, and, consequently, the AAA Rules. *Id*. at 363.

Likewise, the Ninth Circuit has held that the FAA, not the CAA, applies when "the parties have not clearly and unmistakably designated that nonfederal *arbitrability* law applies." *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (emphasis in original). In *Brennan*, the parties disputed whether the plaintiff, an executive vice president, had "Good Reason" to terminate his employment, which would have entitled him to significant severance compensation under his employment agreement. *Id*. at 1127. When the bank refused to pay his severance, he filed suit in federal court for breach of contract and argued that the arbitration provision providing "any controversy or claim arising out of this [Employment] Agreement or [Brennan's] employment with the Bank or the termination thereof ... shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association," was procedurally and substantively unconscionable and therefore unenforceable. *Id*. at 1128.

As explained by the Ninth Circuit, the "thrust" of the plaintiff's argument in *Brennan* was that California arbitration law applied, because the arbitration clause provided that the parties were entitled to all discovery provided for under California civil procedure and to assert all claims as if they were in court. *Id*. at 1129. The Ninth Circuit disagreed strongly, however, finding that "[w]hile the Employment Agreement is clear that California's procedural rules, rights, and remedies apply *during* arbitration, it says nothing about whether California's law governs the question whether certain disputes are to be submitted to arbitration in the first place." *Id.* (emphasis in original). The Court continued, expressly noting that the plaintiff's argument was "not assisted by *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*," because *Volt* dealt only with the issue of whether or not the parties agreed to

apply the California procedural rules during arbitration – it did not address the question of substantive law governing arbitrability. *Id.* at 1129-30.

Finally, the Ninth Circuit noted that while the court typically would decide the two "gateway" issues of "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute," these gateway issues can be expressly delegated to the arbitrator where "the parties *clearly and unmistakably* provide otherwise." *Brennan*, 796 F.3d at 1130 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986))(emphasis in original). After noting that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," the Court found that the issue of arbitrability/unconscionability must be decided by the arbitrator. *Brennan*, 796 F.3d at 1130-31 (collecting cases).

Like the unsuccessful defendant in *Preston* and the unsuccessful plaintiff in *Brennan*, Weickert argues that because the Arbitration Procedures make a passing reference to the California Rules of Civil Procedure, the CAA governs arbitrability. Specifically, Weickert argues that "the Arbitration Clause expressly states that California Code of Civil Procedure Section 1280, et seq., the California Arbitration Act ("CAA") applies to any action to enforce it." *See* Pl. Opp. Br., ECF 45 at 6. Weickert's argument is misplaced for three reasons. First, it asks this Court, rather than the arbitrator, to decide the issue of arbitrability/unconscionability. Second, in doing so, Weickert urges this Court to apply the CAA, despite a clear mandate from the U.S. Supreme Court that the FAA applies. Third, if literally construed as Weickert suggests, an

employee could avoid arbitration altogether by simply filing suit in federal court.[1] Clearly, the parties had no such intentions.

The Arbitration Procedures contained in the NPA Personnel Handbook state that arbitrations are to be "governed by the Judicial Arbitration and Mediation Services ("JAMS") Arbitration Rules and Procedures for Employment Disputes in effect at the time." *See* ECF 43-4, at 30. A copy of the JAMS Arbitration Rules and Procedures for Employment Disputes (the "JAMS Rules") is attached as Exhibit 1. Pursuant to JAMS Rule 11(b), "*[j]urisdictional and arbitrability disputes, including disputes over the formation,* existence, validity, *interpretation or scope of the agreement* under which Arbitration is sought, *and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator*." (emphasis added).

Given this "incorporation by reference of privately promulgated arbitration rules," this Court should defer the issue of arbitrability to the arbitrator. *Preston*, 552 U.S. at 361-62. While NPA admits that the Arbitration Procedures refer to California civil procedure, NPA notes that the Procedures provide elsewhere that the "arbitrator shall have the authority to award only such remedies as could be awarded by a court *under the applicable substantive law*." ECF 43-4 at 30-31 (emphasis added). Accordingly, the "best way to harmonize" the parties' adoption of the JAMS Rules, California civil procedure, and the "applicable substantive law," as determined by the arbitrator, is to leave arbitrability issues to be resolved by the FAA, and, consequently, the arbitrator under JAMS Rules. *Preston*, 552 U.S. at 363 ; *see also Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012) ("the parties' incorporation of the JAMS

---

[1] To be sure, a motion to compel arbitration in a California state court, pursuant to the California Rules of Civil Procedure, would have no effect on pending federal proceedings. "While Congress has seen fit to authorize courts of the United States to restrain state-court proceedings in some special circumstances, it has in no way relaxed the old and well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings in *in personam* actions." *Donovan v. City of Dallas*, 377 U.S. 408, 412-13 (1964).

rules and their employment of a broad arbitration provision establish their clear and unmistakable intent to submit the issue of arbitrability to arbitration"); *Zelkind Flywheel Networks, Inc.*, 2015 WL 9994623, at *3 (N.D. Cal. Oct. 16, 2015) (by incorporating JAMS, "the parties have clearly and unmistakably agreed to allow the arbitrator to decide the arbitration provision's application, validity, and scope.").

Should this Court elect to adjudicate the issue of arbitrability, however, the FAA "supplies not simply a procedural framework applicable in federal courts; it also calls for the application… of federal substantive law regarding arbitration." *Preston*, 552 U.S. at 349. This is so, because Weickert and NPA "have not clearly and unmistakably designated that nonfederal *arbitrability* law applies." *Brennan*, 796 F.3d at 1129 (emphasis in original). Accordingly, Weickert's suggestion on brief that Defendants' "argument that the FAA does not require an arbitration clause to be signed to be enforceable should be wholly disregarded," is clearly misguided. *See* ECF 45 at 13. Not only should the Court not disregard the previously cited cases applying the FAA to compel arbitration, but the Court should further find that Weickert agreed to arbitrate his claims for the additional reasons stated below.

> **B.  Weickert Assented to the Arbitration Clause By Availing Himself of the Grievance Procedures and by Failing to Notify NPA of His Alleged Intent Not to Be Bound By The Arbitration Clause.**

Like his repeated contentions that this Court should not rely on cases applying the FAA, Weickert's argument on brief that he cannot be compelled to arbitrate because he did not sign the Employee Receipt and Acknowledgement Form is erroneous. It is a well settled rule of contract law that an offer merely suggesting a permitted manner of acceptance does not preclude another method of acceptance. *See*, *e.g.*, *In re Crossman's Estate*, 231 Cal. App. 2d 370, 372, 41 Cal. Rptr. 800, 801 (Ct. App. 1964) (citing Restatement (First) of Contracts § 61 (1932)). *See also*

*Pac. Corp. Grp. Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 311, 181 Cal. Rptr. 3d 399, 413, n.13 (2014) (noting that "California courts often take guidance on contract issues from the Restatement."). As the Restatement explains, "[u]nless otherwise indicated by the language or the circumstances, an offer invites acceptance in any manner and by any medium reasonable in the circumstances." Restatement (Second) of Contracts § 30 (1981). Indeed,

> **Insistence on a particular form of acceptance is unusual**. Offers often make no express reference to the form of acceptance; sometimes ambiguous language is used. **Language referring to a particular mode of acceptance is often intended and understood as suggestion rather than limitation**; the suggested mode is then authorized, **but other modes are not precluded**.

Restatement (Second) of Contracts § 30, Comment b (1981) (emphasis supplied).

In *Pac. Corp. Grp. Holdings*, 232 Cal. App. 4th at 312, the court found that a former employee entered into a compensation agreement with his former employer despite the employee's failure to return a signed copy of the agreement. The agreement provided, in relevant part, "[i]f this letter meets with your approval, we request that you indicate such approval by returning the enclosed copy of this letter, appropriately signed." *Id* at 312. The court held that while the agreement "requested" that the former employee "indicate his acceptance by returning the letter signed; it did *not* state that [his] return of the signed letter was the only possible manner by which he could indicate his assent to the agreement." *Id*. at 312 (emphasis in original). The court relied on e-mails between the parties, and an e-mail from the employer to a client noting that the agreement had been finalized, to explain that "[d]istinction must be made between an offer which makes a 'positive requirement' or imposes 'an absolute condition' of a specified manner of acceptance, on the one hand, and on the other an offer which 'merely suggests a permitted ... manner....'" *Id*. at 313 (citing *In re Crossman's Estate*, 231 Cal. App. 2d 370, 372, 41 Cal. Rptr. 800, 801 (Ct. App. 1964); Rest. 2d, §§ 30, 60).

In this case, even the most cursory glance at the Employee Receipt and Acknowledgment page containing the agreement to arbitrate demonstrates that it merely suggests a permitted manner of acceptance and does not preclude other methods. In short, there are lines for the employee's printed name, signature, and date; however, nowhere does it state that an employee may not accept in any manner other than by signing. ECF 43-4 at 40. Accordingly, a signature is not an absolute condition to finalizing the agreement, and acceptance may be achieved, *inter alia*, by active conduct or mere silence, both of which have been recognized in California and the District of Columbia. *See* Restatement (Second) of Contracts § 19(1) (1981) ("The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.").

> **1. Weickert's Conduct, As Alleged in the Complaint, Evidences His Assent to Be Bound by the Arbitration Clause.**

In his Opposition Brief, Weickert objects to the introduction of e-mails that he personally sent while enforcing NPA's Grievance and Arbitration Procedures, and therefore summarily concludes that only "employees subordinate to Plaintiff who signed the Acknowledgement agreed to arbitrate their claims against Defendants." ECF 45 at 14. Weickert also states that "Defendants have not offered any evidence that Plaintiff initiated the arbitration and grievance procedure," and he therefore seeks to discount a plethora of cases applying the FAA to enforce unsigned arbitration agreements. ECF 45 at 13-14. The problem with this approach, however, is that it requires this Court to turn a blind eye to the allegations in Weickert's Complaint, which clearly demonstrate his initiation of the Grievance Procedures.

The Introduction to Grievance and Arbitration Procedures provides, in relevant part, "[t]his procedure covers the full range of employment disputes, including those based on state and federal civil rights laws, *other state and federal statutes, torts and public policies* and those involving terminations." ECF 43-4 at 28 (emphasis added). Step 3 of the Grievance Procedures

specifically states "[i]f your grievance concerns an action by the Executive Director/CEO, you should submit your written grievance to the Executive Committee within 30 days of when the event giving rise to the grievance occurred." *Id*. at 29. Step 3 also provides that the Senior VP/CFO determines "the particular member of the Executive Committee to whom the written grievance should be submitted." *Id*.

In his Complaint, Plaintiff alleges that Defendant Fabricant had been engaging in internally prohibited and/or illegal behavior. ECF 1-1, ¶11. "Consequently, ***in an effort to ensure that Fabricant's illegal behavior would be addressed by NPA*** and with the intention of getting NPA to ensure such behavior would cease, ***Plaintiff wrote a lengthy letter to NPA's president, Roxanne Green ("Green"), in early May 2015.*** " *Id*. at ¶11 (emphasis added). "Shortly after sending the letter to Green," Plaintiff alleges that he heard of additional misconduct by Fabricant and "***promptly sent a letter to NPA's Board of Directors***, detailing the event to the best of his understanding." *Id*. at ¶14 (emphasis added). In his second letter, "Plaintiff told the Board of Directors that since reporting the incident, Fabricant had completely cut off communications to him … [and] ***Plaintiff advised the Board that Fabricant's behavior towards him constituted retaliation.*** " *Id*. at 15 (emphasis added). Importantly, NPA's President, who is a member of NPA's Executive Committee, acknowledged receipt of Plaintiff's letters and told Plaintiff that an investigation would take place. *Id*. at 16.

After twice initiating the grievance procedures by submitting written grievances to the Executive Committee, but apparently becoming personally dissatisfied with the results of NPA's investigation, Weickert chose to forego the NPA Arbitration Procedures and institute this litigation in their place. Weickert should not be permitted to approbate and reprobate by asking NPA to address Fabricant's allegedly illegal activities via the grievance procedures, while asking the courts to rectify his own poor job performance. Accordingly, because Weickert personally

initiated the Grievance and Arbitration Procedures, he cannot unilaterally abandon them, and his agreement to arbitrate may be implied by his conduct. *See, e.g. Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994); *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1356 (9th Cir.1983). Moreover, by pleading allegations in his own Complaint that demonstrate his initiation of the Grievance and Arbitration Procedures, Weickert is estopped from avoiding arbitration. *See* Pl. Opp. Brief, ECF 45 at 17 (citing *Fox v. Computer World Services Corp.*, 920 F. Supp. 2d 90, 104 (D.D.C. 2013)).

> **2. As An 18-Year Senior VP/CFO Responsible for Administering the Grievance and Arbitration Procedures, Weickert Had A Duty To Inform NPA of His Alleged Intent Not To Be Bound by the Arbitration Procedures.**

Under California contract law, "[a]s a general rule, silence or inaction does not constitute acceptance of an offer." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (citing *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal.App.4th 1372, 25 Cal.Rptr.2d 242, 251 (Cal. App. 1993)). However, "*where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent.*" *Id.* (citing *Beatty Safway Scaffold, Inc. v. Skrable,* 180 Cal.App.2d 650, 4 Cal.Rptr. 543 (Cal. App. 1960)) (emphasis added); *see also Golden Eagle,* 20 Cal.App.4th at 1387, 25 Cal.Rptr.2d 242 ("silence or inaction operates as an acceptance 'where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction'") (citing Restatement of Contracts (Second) § 69(1)(b)).

In *Circuit City*, the store filed a petition under the FAA to stay a former sales associate's state court FEHA action based on the associate's failure to opt out of a "Dispute Resolution Agreement" ("DRA") contained in a packet of materials distributed to store employees. *Circuit City*, 294 F.3d at 1106. The sales associate argued that "he did not assent to the DRA because he did not affirmatively opt in to the program." *Id*. at 1109. The Court disagreed, however, noting

that while "Najd and Circuit City were not two typical parties contracting at arm's length," nevertheless "where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent." *Id*. Accordingly, the court emphasized the fact that employees were allowed to opt out of the DRA by returning a form to Circuit City's corporate headquarters, and held that "where the import of Najd's silence was as apparent as if he signed his consent, we may infer assent." *Id*.

Likewise, "[t]he District of Columbia has adopted the doctrine of acceptance by silence as set forth in the Restatement (Second) of Contracts." *In re Capitol Hill Grp.*, 313 B.R. 344, 355 (D.D.C. 2004) (citing *Klingensmith, Inc. v. District of Columbia*, 370 A.2d 1341, 1343 (D.C. 1977)). Specifically, in D.C., "silence will operate as an acceptance '(w)here because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.'" *William F. Klingensmith, Inc. v. D.C.*, 370 A.2d 1341, 1343 (D.C. 1977) (quoting restatement Restatement (Second) of Contracts § 72(1)(c) (Tent. Draft, 1964)).

Unlike the new sales associate in *Circuit City* who received a packet of materials upon being hired, Weickert is an 18-year Senior Vice President and the Chief Financial Officer of NPA, who surely understood, or at least NPA is entitled to assume that he understood based on their prior dealings, the ins and outs of the Grievance and Arbitration Procedures he was responsible for administering. Moreover, having held his position and responsibilities for as long as he did, Weickert surely understood, or at least NPA is entitled to assume that he understood based on their prior dealings, the importance NPA placed upon exclusively arbitrating employment disputes. Accordingly, when NPA distributed the Personnel Handbook, Effective November 4, 2014, ECF 43-4 at 1, Weickert, a sophisticated party, had a duty to notify NPA of his intent not to be bound by the Grievance and Arbitration Procedures within a reasonable period of time. Weickert, however, remained silent. Thus, like the sales associate in *Circuit City*,

12

Weickert's argument that he did not affirmatively opt in to the arbitration program is of no consequence. Given the course of dealings between Weickert and NPA over the course of Weickert's 18-year career as an executive, his silence or inactivity constitutes his assent to being bound by the arbitration agreement. *Circuit City*, 294 F.3d at 1109.

### C. The Unilateral Modification Provision Does Not Render the Arbitration Clause Unenforceable.

In his Opposition Brief, Weickert cites *Sparks v. Vista Del Mar Child & Family Services*, 207 Cal. 4th 1511, 1523 (2012) for the premise that an arbitration clause is unenforceable "because an agreement to arbitrate is *illusory* where an employer can unilaterally modify the contract." ECF 45 at 8. The problem with Weickert's argument, however, aside from the fact that the quoted language is dictum, is that the *Sparks* approach was specifically rejected by the Court of Appeals when rendering its holding in *Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 155 Cal. Rptr. 3d 506 (2013) (cited in Defendants' Motion). *See* ECF 43-1 at 8.

In *Serpa*, the Court of Appeals specifically held that "the implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being illusory and thus unconscionable." *Serpa*, 215 Cal. App. 4th at 708, 155 Cal. Rptr. 3d at 516. The court continued, "[i]n holding the unilateral right to modify the arbitration agreement is restricted by the implied covenant of good faith and fair dealing, we are mindful of, albeit not persuaded by, dictum from our Division Five colleagues' recent opinion in *Sparks v. Vista Del Mar Child & Family Services*…" *Id*. at 708, n.7. The court explained that the analysis in the *Sparks* opinion was limited to a single sentence, "citing only to out-of-state authority, without further legal analysis, let alone any discussion of [California precedent on the issue]." *Id*. Accordingly, the modification clause at issue in the case at bar has no impact on the enforceability of the arbitration clause or NPA's ability to compel arbitration.

**D. The Cost-Sharing Provision of the Arbitration Clause Is Not Unconscionable, And, In Any Event, May Be Severed Under California Law.**

As Weickert acknowledges on brief, "[u]nconscionability has both a procedural and substantive element," and "*[b]oth elements must be present before a contract provision will be rendered unenforceable on grounds of unconscionability*." ECF 45 at 21 (emphasis added) (citations omitted). Weickert's substantive unconscionability argument focuses exclusively on the issue of fee-splitting. *See id.* at 22. As for "procedural unconscionability," Weickert again feigns surprise at the suggestion that the Grievance and Arbitration Procedures apply to his claims. As discussed on pages 10-11, *supra*, Weickert's arguments ring hollow given the extensive details in the Complaint regarding Weickert's initiation of the Grievance Procedures, and he should be estopped from making them.

Moreover, while Weickert adopts the proverbial "see no evil, hear no evil" approach to argue that the Grievance and Arbitration Procedures are "silent on any available remedy if the Sr. Vice President/CFO has a grievance that goes unresolved," ECF 45 at 12, this is simply not the case. Rather, the Arbitration Procedures specifically provide that "Arbitrable disputes are those that (1) had been timely initiated and processed through the Association's grievance procedure…; [and] (2) were not resolved to the employee's satisfaction through the Association's grievance procedure." ECF 43-4 at 30. Thus, it strains credulity to find *any* procedural unconscionability in this case.

As for the issue of severance, under California law, an agreement to arbitrate may be enforced if the allegedly unconscionable provisions (i.e. a fee-splitting provision) can be severed from the agreement. *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 101, 134 Cal. Rptr. 2d 446, 465 (2003) (citing *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1075 (2003); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 124 (2000)). In short, the courts perform an "overreaching inquiry," to determine whether the "interests of justice" will be

14

furthered by severance of the offending provision. *Id*. at 124. Essentially, as long as the "central purpose of the contract" is not "tainted with illegality," then the provision may be severed and the agreement will be enforced. *Id*. at 124.

Despite Weickert's protestations to the contrary regarding the "surprise" nature of his agreement to arbitrate, there is no procedural unconscionability in the case at bar. Likewise, the fee-splitting provision expressly provides that "the arbitrator may reallocate the fee in the event that it is determined that such is required in the interest of justice." ECF 43-4 at 31. Accordingly, the agreement is far from being "tainted with illegality," and the fee-splitting provision may be severed to eliminate any alleged substantive unconscionability perceived by Weickert as a bar to arbitration.

**E.   The Parties Joint Actions in Transferring This Case to This Court Do Not Amount to A Waiver of NPA's Right to Compel Arbitration.**

As explained by the Supreme Court of the United States, the FAA "establishes that, as a matter of federal law, ***any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration***, whether the problem at hand is the construction of the contract language itself ***or an allegation of waiver***, delay, or a like defense to arbitrability." *Owen-Williams v. BB & T Inv. Servs., Inc.*, 2006 WL 6593816, at *8 (D.D.C. July 31, 2006) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)) (emphasis added). Accordingly, "waiver of the right to arbitration is disfavored because it is a contractual right, and thus 'any party arguing waiver of arbitration bears a ***heavy burden of proof***.'" *United States v. Park Place Associates, Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) (emphasis supplied).

Purporting to carry this heavy burden, Weickert points to Defendants' removal of this case to federal court; the parties' joint stipulation to transfer venue to this Court; the parties' joint participation in a Rule 26(f) conference; NPA's filing a Rule 12(b)(6) Motion to Dismiss some of Weickert's claims; and Weickert's alleged drafting of discovery that he never served upon

Defendants. Contrary to Weickert's assertions on brief, however, state and federal courts in California, the District of Columbia, and across the United States, have refused to find waiver based upon such limited action. This is so because it is well settled that a party is entitled to take action to secure the proper forum before filing a motion to compel arbitration, and litigation expenses alone are insufficient to constitute prejudice.

In *Saint Agnes Med. Ctr. v. PacifiCare of California*, cited by Weickert in his Opposition Brief, the court explained that "[b]oth state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration." 31 Cal. 4th 1187, 1195, 82 P.3d 727, 732 (2003) (collecting cases). The court acknowledged, however, that an important factor is whether "the litigation machinery has been substantially invoked" and whether the parties "were well into preparation of a lawsuit." *Id.* at 1196. Similarly, the U.S. Court of Appeals for the District of Columbia Circuit has acknowledged that waiver may occur as a result of "[s]ubstantial invocation of the litigation process," and that the "essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774, 777 (D.C. Cir. 1987). In his Opposition Brief, Weickert cites the test used in the Ninth Circuit, where a party seeking to prove waiver must show "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).[2]

Nonetheless, rather than differentiating between California and District of Columbia law, because the FAA applies to this dispute, it is most appropriate to compare the Defendants'

---

[2] Plaintiff cites the *Fisher* opinion as stating California law, however, that case arose in the U.S. District Court of Idaho, and merely contains the approach adopted by the Ninth Circuit under the FAA.

limited participation in this litigation to the far more extensive participation by defendants in other litigation, which nevertheless has been found insufficient to constitute a waiver of the right to arbitrate under the FAA.

For example, in *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661-62 (5th Cir. 1995), the Fifth Circuit found that a securities dealer did not waive its right to seek arbitration of an employee's age discrimination claim by substantially invoking the judicial process, even though the dealer removed the state court action to federal court, filed a motion to dismiss and motion to stay proceedings, answered the complaint, asserted a counterclaim, and exchanged Rule 26 discovery with the plaintiff. *Compare, Williams*, 56 F.3d at 661-62, *with Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159 (5th Cir. 1986) (holding that waiver had occurred where defendant "initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines," delayed seventeen months, and caused the other side to incur significant attorney's fees in defending summary judgment).

In *Gloster v. Sonic Auto., Inc.*, 226 Cal. App. 4th 438, 449, 171 Cal. Rptr. 3d 648, 656 (2014), the California Court of Appeal granted an employer's motion to compel arbitration filed one year after the employee filed suit, holding that "[a]nswering a complaint and participating in litigation, on their own, do not waive the right to arbitrate." The court noted that the employer had "filed no motions or discovery requests of their own, restricting their litigation activity to responding to Gloster's requests and attending case management conferences." *Id*. The Court found the plaintiff's claim of prejudice inadequate, noting that it was purely "based on the legal expenses he incurred, which were largely the result of his own efforts at discovery." 226 Cal. App. at 450, 171 Cal. Rptr. 3d at 657.

Finally, just as merely filing an answer cannot amount to a waiver, numerous courts have held that filing a Fed. R. Civ. P. 12(b)(6) motion falls far short of waiving the right to arbitrate. For example, in *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 888 (2d Cir. 1985), the Second Circuit held that "[w]here a plaintiff files an intricate complaint, setting forth numerous claims outside the scope of, though partially related to, the arbitrable claims, he should not be altogether surprised that a defendant takes the protective step of filing a motion to dismiss, specifically permitted by Fed.R.Civ.P. 12(b) to be filed before an answer." The Court went on to hold that a securities firm did not waive its right to invoke arbitration with a customer, even though it delayed seeking arbitration during approximately eight months of pretrial proceedings, engaged in discovery, and filed an answer to the customer's federal securities, RICO, and pendent common-law claims. *Id.* at 887. *See also Skrynnikov v. Fed. Nat. Mortgage Ass'n*, 943 F. Supp. 2d 172, 179 (D.D.C. 2013) (holding that employer's filing of Rule 12(b)(6) motion to dismiss did not amount to waiver); *Gordon-Maizel Const. Co. v. Leroy Prods., Inc.*, 658 F. Supp. 528, 531 (D.D.C. 1987) (holding that defendant's responsive pleadings "in no way constitutes the degree of 'active participation in litigation' necessary to establish waiver") (citing *Rush*, 779 F.2d at 779)).

Contrary to Weickert's assertion, the totality of the circumstances in this case and the extensive case law on this issue demonstrate that NPA has not acted inconsistently with its fundamental right to arbitration. *Nat'l Found. for Cancer Research*, 821 F.2d at 774, 777. Seeking removal is a statutory right but one which comes with a strict time limit. 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based"). Moreover, NPA's filing of a Rule 12(b)(6) Motion to Dismiss, which Weickert acknowledges was "only as

to three of Plaintiff's nine (9) causes of action," ECF 45 at 22, can hardly amount to a waiver of the right to arbitrate. Additionally, Weickert's claim in this case that he was prejudiced because "the moment the parties' meet and confer under Rule 26(f)  was complete, Plaintiff prepared extensive written discovery that *inevitably would have been propounded on Defendants*," falls far short of proving that NPA waived its right to arbitrate. ECF 45 at 21. Weickert's effort in drafting his own yet to be propounded discovery, is far different from a situation where a defendant is "engaged in discovery, noticing and taking depositions, and requesting and receiving documents." *Owen-Williams*, 2006 WL 6593816, at *10.   Moreover, because Defendants' motion seeks a stay of the case against Defendant Fabricant, any alleged prejudice to Weickert is reduced even further. *Fisher*, 791 F.2d at 694, 697 (9th Cir. 1986) (holding that even extensive discovery into both arbitrable and non-arbitrable claims before moving to compel arbitration is insufficient prejudice for a waiver if that discovery is available for trial of the non-arbitrable claim in federal district court). Given that no discovery or litigation on the merits has taken place a mere four months into this dispute, the litigation process has not been substantially invoked by Defendants and Weickert could not be prejudiced so significantly as to require waiver. Defendants' Motion to Compel Arbitration should be granted.

### III.   CONCLUSION

For the reasons stated in this Memorandum, and in recognition of the strong federal policy and precedent encouraging enforcement of arbitration agreements, the Defendants respectfully request the Court to grant their motion to compel arbitration pursuant to 9 U.S.C. §4. Pending the outcome of arbitration, Defendants request that this case be stayed, pursuant to 9 U.S.C. §3.

Dated: April 25, 2016

Respectfully submitted,

NATURAL PRODUCTS ASSOCIATION and
DANIEL FABRICANT


By:   /s/   Andrew J. Narod
Andrew J. Narod (No. 1006083)
LeClairRyan, A Professional Corporation
2318 Mill Road, Ste. 1100
Alexandria, Virginia  22314
Telephone: (703) 647-5935
Facsimile:   (703) 647-5962
andrew.narod@leclairryan.com

and

Richard J. Oparil (D.C. Bar No. 409723)
PORZIO, BROMBERG & NEWMAN P.C.
1200 New Hampshire Ave. NW, Suite 710
Washington, D.C. 20036
Telephone: (202) 517-1888
rjoparil@pbnlaw.com

*Attorneys for Defendants*
*Natural Products Association and Daniel Fabricant*


## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2016, I served the foregoing on all counsel of record through the Court's CM/ECF system.

By:   /s/   Andrew J. Narod
Andrew J. Narod (No. 1006083)